IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARROLL J. KEAR,

        Plaintiff,

vs.

        Case No. 06-1234-JTM

BOARD OF COUNTY COMMISSIONERS
OF SEDGWICK COUNTY, KANSAS,

        Defendant.

**MEMORANDUM AND ORDER**

      Presently before the court is Defendant Board of County Commissioners of Sedgwick County Kansas (Sedgwick County's) motion for summary judgment on all of Plaintiff Carroll J. Kear (Kear's) claims (Dkt. No. 43). The court held oral arguments on the motion on September 15, 2008. After carefully considering the briefs and the arguments, this court grants defendant's motion.

**Standard of Review**

      Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.,* 353 F.3d 848, 851 (10th Cir. 2003). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* In

considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir. 1993). The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate* Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*). The opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1).

**Facts**

The court makes the following findings of fact. Excluded from these findings are allegations of fact which are not supported by the cited evidence, which are grounded on hearsay

or other inadmissible evidence, or which reflect an unexplained and unjustified contradiction of earlier deposition testimony. *See Franks v. Nimmo*, 796 F.2d 1230 (10th Cir.1986).

In July 2003, Kear began working as a clerical employee at COMCARE, a department of defendant Sedgwick County, which provides services to the mentally ill and substance abusers. Kear worked as an "office specialist" in Family and Children Consultation Services (FCCS), a division of COMCARE.

Prior to her employment with Sedgwick County, Kear suffered from degenerative lumbar disc disease. On October 30, 2003, approximately three months after beginning her employment at COMCARE, Kear underwent lumbar fusion surgery. Although Kear was not yet eligible for Family Medical Leave Act (FMLA) benefits, Sedgwick County accommodated Kear by allowing her to work part time during her five-month recovery from back surgery. The doctor who performed the surgery gave Kear a release to return to work with various restrictions, including that she was only to work a maximum of eight hours per day. Kear returned to work full time on March 22, 2004, after missing approximately forty-nine out of ninety-five work days, or about ten weeks of work, after her surgery.

In late December 2004, supervisors at FCCS wanted to terminate Kear for work performance. Instead of terminating Kear, Sedgwick County transferred her to Outpatient Services (OPS), a division within COMCARE, that was in need of additional clerical assistance. Kear requested the transfer from FCCS, and remained in the same office specialist position for pay purposes at OPS, although the job description and work station were different.

Almost immediately after the transfer, Kear began missing work because of her back pain. On January 19, 2005, Kear was seen by her family physician, Catherine Mitchell, D.O.,

and complained that her back hurt and that her job was "giving her a hard time." As a result of that appointment, Dr. Mitchell wrote a letter, dated January 20, 2005, which stated:

> Due to disc disease and recent fusion of the lumbar spine, which failed, the patient has some limitations on her job performance. She is unable to stoop, bend, twist or reach any distance.
>
> For this reason, I would recommend you reevaluate her work station. Please call with any questions.

On February 9, 2005, Dr. Mitchell completed a FMLA leave request form in which she wrote that Kear was unable to perform one or more of the essential functions of her job and that due to her severe lumbar disc disease, which was of long term duration, Kear would miss work intermittently for the next year. Dr. Mitchell understood intermittent leave to mean one or two days per month. On February 22, 2005, Sedgwick County approved Kear's request for FMLA intermittent leave.

On February 28, 2005, Kear gave her supervisor a "Request for Reasonable Accommodation" form, on which she indicated that various work activities adversely impacted her disability, including: "bending, reaching, stretching going to get samples and/or vouchers, sit at an angle, need to have computer set up because of full upper body brace, very limited lifting [and] pushing." Kear further indicated that she "need[ed] and would like to be able to <u>sit</u> at a computer <u>without</u> doing any of the above." Sedgwick County attempted to accommodate Kear's doctor restrictions at OPS, but Kear continued to miss numerous work days. From January 10, 2005 to March 4, 2005, Kear missed approximately twenty-nine out of forty work days, most of which was time under FMLA.

On March 3, 2005, County Human Resources Director Jo Templin wrote Kear a letter acknowledging Kear's significant restrictions and advising her that she must be examined by Dr. Larry Wilkinson of the Via Christi Occupational and Environmental Clinic to determine Kear's ability to perform the duties of her position. Kear was then placed on paid leave at the county's expense. On March 8, 2005, Dr. Wilkinson examined Kear, and wrote a letter to Sedgwick County on March 15, 2005, in which he advised that Kear could not perform the essential functions of the office specialist position at OPS or at FCCS, and that he would reevaluate Kear if her medical situation improved to the point that she had fewer restrictions. By this time, Kear's doctors agreed that her lumbar fusion surgery had failed.

In a letter dated March 17, 2005, Jo Templin notified Kear of Dr. Wilkinson's opinions and advised her that she was being returned to unpaid, full-time FMLA leave because of Dr. Wilkinson's opinion that she was unable to perform the essential functions of her job. Kear was specifically advised in the letter that if her "condition improves to the point that Dr. Wilkinson releases you for work, you can return to your position at OPS," and that her FMLA leave would end on April 22, 2005.

It is uncontested that the March 17 letter did not terminate Kear's employment, and did not notify Kear that she would be terminated on April 22, 2005, when her leave ended. Nevertheless, on April 6, 2005, Kear filed an administrative charge of disability discrimination with the Kansas Human Rights Commission (KHRC) and the Equal Employment Opportunity Commission (EEOC), asserting that Sedgwick County: (1) reprimanded her for using FMLA leave; (2) transferred her to OPS involuntarily; (3) denied her request to have her work space and

position reevaluated because of her physical restrictions; and (4) placed her on involuntary FMLA leave and planned to terminate her employment upon the expiration of her allotted time.

Although Kear's FMLA leave was exhausted on April 22, 2005, Sedgwick County did not terminate her employment. Instead she was able to continue as an unpaid employee. Dr. Wilkinson met with Kear at her request on May 17, 2005, and on June 13, 2005, Dr. Wilkinson wrote a letter to the County stating, in part:

> Since she has not been working, her symptoms have improved marginally. Basically her medical condition has not improved and she has no new restrictions since my initial visit on March 8, 2005. Therefore, it is still my opinion that she is unable to work at either the FCCS or OPS positions.
>
> If her medical condition improves and is objectively documented and the restrictions she is working under change, I am willing to entertain reviewing this information again.

On June 27, 2005, Marilyn Cook, the director of COMCARE, wrote a letter notifying Kear that based on Dr. Wilkinson's opinions expressed in the March and June letters, a pre-termination hearing would be held in the near future, where she could be represented by counsel and would have an opportunity to present oral and written reasons why her employment should not be terminated. Kear was again placed on paid leave at Sedgwick County's expense on June 27, 2005, until the outcome of the pre-termination hearing was decided.

The pre-termination hearing was held on July 29, 2005. Marilyn Cook presided over the hearing, at which Kear, represented by her current counsel, offered a letter from Dr. Mitchell, dated July 13, 2005, which stated, in part:

> Carroll [Kear] can return to work and can perform any job duty, as long as she is not required to bend, stoop, lift anything over 5 lbs.,

> reach beyond normal arms length, or walk and/or sit for prolonged periods.
>
> Her pain has decreased considerably, and she no longer has to use her pain simulator as often.

Dr. Mitchell wrote that letter having never seen Kear's job descriptions during Kear's Sedgwick County employment. Kear was not terminated at the pre-termination hearing. Instead, Marilyn Cook directed that Dr. Wilkinson and Dr. Mitchell come to a consensus regarding whether Kear could do the job. Kear admits that she was physically incapable of doing the essential functions of her job at OPS without accommodations.

On August 2, 2005, Judy Addison, Director of OPS, wrote a letter to Dr. Wilkinson and enclosed a copy of Dr. Mitchell's July 13, 2005 letter. Addison requested that Dr. Wilkinson meet with Kear again, confer with Dr. Mitchell, or reiterate his opinion that Kear was unable to work. In a letter on August 16, 2005, Dr. Wilkinson replied:

> As I have previously stated that unless Ms. Kerr's (sic) restrictions change based on actual change in her medical condition, I am of the opinion that these restrictions exceed the essential functions of these two positions. Therefore, she cannot return to work in spite of her primary care physician stating that she can.

Based on Dr. Wilkinson's medical opinion, Marilyn Cook wrote a letter to Kear on August 24, 2005, notifying her that she would be terminated, on August 26, 2005.

**Analysis**

Kear claims:

(1) Defendant took adverse employment action against the plaintiff, terminated and notified the plaintiff of her termination in violation of Title I of the ADA, specifically, by discriminating against her based on her disability.

    (2)       Defendant denied the plaintiff voluntary and intermittent FMLA leave and instead placed her on involuntary FMLA leave.

The court will consider each claim separately.

I.  ADA Claim

*A.  Exhaustion of Administrative Remedies*

Title I of the ADA prohibits "covered employers" from discriminating against a "qualified individual with a disability because of the disability," and adopts Title VII procedures for enforcement. 42 U.S.C. §§ 12112(a), 12117(a). Exhaustion of administrative remedies is a jurisdictional prerequisite to suit and provides an opportunity to resolve the issue internally in accordance with Title VII's goal of voluntary compliance. *Moore v. City of Overland Park*, 950 F. Supp. 1081, 1086 (D. Kan. 1996) (citations omitted).

To exhaust administrative remedies, a plaintiff must file a claim with the EEOC. Next, the court must look at the scope of the allegations raised "because [a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (citations omitted). Additionally, "each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* As such, administrative remedies for acts not mentioned in the claim or occurring after the claim was filed would not be exhausted. *Id.* Therefore, the court is unable to consider acts not mentioned in Kear's EEOC claim.

In this case, Kear filed a dual charge of discrimination with KHRC and EEOC in April 2005, alleging that Sedgwick County: (1) reprimanded her for using FMLA leave;

(2) transferred her to OPS involuntarily; (3) denied her request to have her work space and position reevaluated because of her physical restrictions; and (4) placed her on involuntary FMLA leave and planned to terminate her employment upon the expiration of her allotted time. However, Ms. Kear filed her KHRC/EEOC complaints almost five months before the termination of her employment. Because Ms. Kear failed to exhaust her administrative remedies regarding her employment termination in August 2005, her ADA termination claim is barred as a matter of law. As such, Sedgwick County is entitled to summary judgment on Ms. Kear's ADA claim.

Even if Ms. Kear had exhausted her administrative remedies on her ADA claim, however, Sedgwick County would still be entitled to summary judgment because she cannot establish a prima facie case.

### B. Prima Facie Claim of Disability Discrimination

If Ms. Kear had exhausted her administrative remedies, she would have had to prove that: (1) she is a disabled person within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job at OPS; and (3) Sedgwick County discriminated against her because of the disability. *Id.* at 1189.

1. Disabled Person Under the ADA

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). "Major life activities" include "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

In this case, Kear's chronic back pain constitutes a physical impairment. *See Barnard v. A.D.M. Milling Co., Inc.*, 987 F. Supp. 1337, 1342 (D. Kan.1997) (holding that lower back injury constitutes a physical impairment); 29 C.F.R. § 1630.2(h)(1). Her back pain, a long-term condition which surgery failed to relieve, restricted Kear from bending, stooping, lifting anything over five pounds, reaching beyond normal arms length, or walking or sitting for prolonged periods. As such, it substantially limited one or more of her major life activities. *See Moroney v. United Parcel Service, Inc*., 70 F. SUPP.2d 1267 (D. Kan. 1999) (holding that an employee's back pain substantially limited the major life activity of lifting where he was restricted from lifting, bending, and twisting); 29 C.F.R. § 1630.2(I). Thus, Kear's back impairment constitutes a disability, meeting the first element of her prima facie case.

2. Qualification to Perform the Essential Functions of the Job

The second element requires a determination of whether Kear is qualified to perform the essential functions of the OPS job, with or without reasonable accommodation. *Jones*, 502 F.3d at 1189. Kear bears the burden of proving she can perform the essential functions of the job. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004). If Kear cannot do the job without accommodation, it must be determined whether reasonable accommodations would allow her to perform the essential functions of the position. *Id. at* 1118. To survive summary judgment, a plaintiff must prove that the requested accommodations appear reasonable*. Id. at* 1122. If the

employer can show it is unable to accommodate, the burden shifts back to the employee, who must provide evidence of her capabilities and suggestions for possible accommodations to rebut the employer's evidence. *Id.*

It is uncontroverted that Kear could not perform the essential functions of her job without accommodation. However, Kear argues that Sedgwick County could have transferred her to another position or, alternatively, that she could have done the job at OPS if her work space had been modified. As such, it appears that Kear is arguing that Sedgwick County failed to accommodate her by refusing to transfer her, which, among other things, requires a plaintiff to specifically identify one or more vacant jobs for which she was qualified that were available within the company at the time she requested a transfer. *See Manning v. General Motors*, 529 F. Supp. 2d 1282, 1289-90 (D. Kan. 2008). Kear has not identified another position within Sedgwick County for which she was qualified and that was available at the time she requested the transfer. Consequently, she has failed to prove that Sedgwick County failed to accommodate her, or that the request for a transfer qualifies as a reasonable accommodation. *See id*.

To support her claim that she could perform the essential functions of the job with modifications of her work space, Kear relies on the fact that she had performed a similar job at FCCS, as well as her doctor's note that she was able to perform the functions of her job, an opinion her doctor formed despite not having looked at her job description. To determine whether a job function is essential, the court considers several factors, including written job descriptions, as well as the employer's opinion. *Id.* at 1119. When an employer provides a written description, courts should not second guess the

employer's judgment as to what duties are essential so long as the description is "job-related, uniformly enforced, and consistent with business necessity." *Id.* In this case, Sedgwick County provided a job description listing the essential duties of Kear's position, which will be considered essential duties.

While still employed at OPS, Kear submitted a request for reasonable accommodation in which she asked to sit at a computer without bending, reaching, stretching, going to get samples or vouchers, sitting at an angle, lifting, or pushing, and that her computer keyboard be raised because of her full upper body back brace. "Reasonable accommodations" include modifying "the existing facilities so they are readily accessible to and usable by individuals with disabilities." 29 C.F.R. § 1630.2 (o)(2). However, a request to be relieved from an essential job function "is not, as a matter of law, a reasonable or even plausible accommodation," and an employer is not required to modify an essential job function. *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d at 1122-23 (citations omitted).

Kear's essential job duties include making copies when necessary and delivering mail, which would require her to leave her desk. Consequently, her request to remain seated is *per se* unreasonable because she asks to be relieved from essential job responsibilities. *See id.* Another of Kear's essential job duties was to retrieve samples and vouchers. Her request to be relieved from that duty is also per se unreasonable. *See id.* With respect to the remaining requests, Kear has admitted that Sedgwick County made reasonable efforts to accommodate her by allowing her to rearrange her work space. Despite this accommodation, Kear continued to miss work because of the physical toll the

-12-

job was taking.  Between January 10, 2005, when she first began working at OPS, and March 4, 2005, the last day Kear was able to work, she missed approximately twenty-nine days.  This suggests she was unable to perform the essential functions of her job even with accommodation.

Ms. Kear has not shown that she was qualified to perform the essential duties of her position at OPS.  Sedgwick County made a good faith effort to accommodate Kear in every way she requested.  As such, Kear was not qualified to perform the essential duties of her job with or without accommodation.  *See Nolan v. Sunshine Biscuits, Inc.*, 917 F. Supp. 753, 759 (D. Kan. 1996) (holding that where a plaintiff failed to prove that he could have performed the essential functions of a position with the defendant, and his employer made a good faith effort to accommodate the plaintiff, the plaintiff was not considered "qualified" for the purposes of the second element of a prima facie disability discrimination claim).  Consequently, the second element of her prima facie case has not been met, and Kear's disability discrimination claim must fail.  *See id.*

3.  Discrimination Because of the Disability

Although Kear has failed to prove the second part of her prima facie claim, the third element warrants mention.  This element requires the plaintiff to offer some affirmative evidence that disability was a determining factor in the employer's decision. "This burden is not onerous, but it is also not empty or perfunctory." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997) (citations omitted).  "[I]f the trier of fact finds [the evidence] credible, and the employer remains silent, she would be entitled to

judgment as a matter of law." *Id.* at 1324. Because Kear alleges four separate incidents, the court will examine each allegation individually.

### a. The First Alleged EEOC Incident

The first incident Kear alleges in the EEOC claim is that in October 2004, Sedgwick County reprimanded her in writing for using FMLA leave. Earlier in the proceedings of this case, the court declined to grant defendant's motion to dismiss on this part of the EEOC claim because of a lack of information on the topic (Dkt. No. 35). Since then, no additional information has been offered to explain the incident. The plaintiff has failed to provide affirmative evidence that her disability played a role in the alleged act, and thus the third element of Kear's prima facie case for this incident must fail.

### b. The Second Alleged EEOC Incident

The second incident Kear alleges in the EEOC claim is that she was involuntarily transferred to OPS. However, she requested the transfer, so her disability was clearly not a determining factor in Sedgwick County's decision. As such, she cannot meet the third element of her prima facie case for this incident.

### c. The Third Alleged EEOC Incident

The third incident Kear alleges in the EEOC claim is that Sedgwick County declined her requests for a reevaluation of her work space and position. The scope of that allegation is unclear, but presumably it refers to the letter from Dr. Mitchell listing her restrictions, a request for reasonable accommodation form submitted February 28, 2005, and her request to be transferred. The court's previously noted analysis that some of

Kear's requests for accommodation were *per se* unreasonable and that Sedgwick County made a good faith effort to assist Kear with her restrictions. Because the defendant complied with Kear's requests for accommodation there is no question of fact on this issue, and summary judgment is proper for this allegation.

Also, as set out above, Sedgwick County did not fail to accommodate Kear by refusing to transfer her, because Kear did not prove there was a vacant position for which she was qualified when she made the request. *See Manning*, 529 F. Supp. 2d at 1289-90. Without proof of a vacant position, Kear has not shown that her disability was a determining factor in Sedgwick County's decision not to transfer her. Therefore, Kear has not met the third element of her prima facie claim for this incident.

### d. The Fourth Alleged EEOC Incident

Finally, Kear alleges that she received a letter from Sedgwick County which, in her words, informed her of her involuntarily placement on FMLA leave "until April 22, 2005, at which time [she] would be terminated." The claim that she was involuntarily placed on FMLA leave falls under Kear's FMLA retaliation claim and will be addressed below. With respect to the rest of the allegation, the letter from Sedgwick County does not terminate Kear's employment, contrary to her assertions. Rather, it informed her that her allotted FMLA leave time would expire on April 22. Because the plain text of the letter from Sedgwick County does not support Kear's claim that she would be terminated, there is no question of fact on this issue, and summary judgment for the fourth allegation is proper.

### C. Conclusion

In summary, there is insufficient evidence to show that Kear was able to perform the essential functions of her job with or without accommodation. Further, even if she had been qualified, Kear did not prove that her disability was a determining factor in the alleged incidents. Therefore, she has failed to meet both the second and third elements of her prima facie case of disability discrimination, and summary judgment on this claim is proper.

II.  FMLA Claim

The FMLA provides that employees are eligible to take up to twelve work weeks of FMLA leave during a twelve-month period, when an employee has "a serious health condition that makes the employee unable to perform the functions of such employee." 29 U.S.C. § 2612(a)(1)(D).  It also prohibits an employer from retaliating against an employee who exercises his or her rights under the FMLA.  29 U.S.C. § 2615(a)(2). Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), in which, if the plaintiff can establish a prima facie case of retaliation, the defendant must offer a legitimate, non-retaliatory reason for the employment action.  *Id.* at 1170.  The plaintiff must then demonstrate that the defendant's reason is pretextual.  *Id.*

To prove a prima facie case of retaliation, Kear must show that: (1) she engaged in a protected activity; (2) her employer took an action that a reasonable employee would have found materially adverse; and (3) a causal connection exists between the protected activity and the adverse action.  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006).

A.  Prima Facie Case of Retaliation

1.  Engaged in a Protected Activity

In this case, Kear engaged in the protected activity of requesting, receiving, and using intermittent FMLA leave.  *Id.* (holding that taking FMLA leave for a serious health condition is a protected activity).  As such, she has met the first element of her prima facie retaliation claim.

2.  Materially Adverse Action

To establish the second element of her prima facie FMLA retaliation claim, Kear must prove that her employer took an action that a reasonable employee would have considered materially adverse.  *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 n.2 (10th Cir. 2006).  An action is considered materially adverse, if it may have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.*

Kear argues that being involuntarily placed on full-time FMLA leave adversely affected her, relying on an older FMLA retaliation test recited in *Jones v. Denver Public Schools*, 427 F.3d 1315, 1323 (10th Cir. 2005).  Kear does not cite any authority to show that being placed on full-time FMLA leave, rather than intermittent FMLA leave, qualifies as a materially adverse action, nor does she explain how being placed on full-time FMLA leave might have dissuaded her from making or supporting a charge of discrimination.  Consequently, she has failed to establish the second element of her prima facie FMLA retaliation claim, and thus summary judgment is proper.

IT IS THEREFORE ORDERED this 18th day of September, 2008, that the court grants defendant's motion for summary judgment (Dkt. No. 43).

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE
